RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE 2/15/12
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| STEVE BELGARD,<br>    Appellant | CIVIL ACTION<br>SECTION "P"<br>1:11-CV-00589 |
| VERSUS | |
| U.S. COMMISSIONER OF SOCIAL SECURITY,<br>    Appellee | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

    Steve Belgard ("Belgard") filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on July 30, 2008 alleging a disability onset date of September 1, 2003 (Tr. pp. 105, 112), due to "gout, asthma, enlarged heart, back problems, feet problems, high blood pressure, sleep apnea" (Tr. p. 139). Those applications were denied by the Social Security Administration ("SSA") on October 23, 2008 (Tr. p. 56).

    A de novo hearing was held before an administrative law judge ("ALJ") on December 22, 2009, at which Belgard appeared with his mother (Tr. p. 30).[1] The ALJ found that Belgard had disability insured status through June 30, 2009, suffers from severe impairments of degenerative disc disease of the lumbar spine, gout of both feet, obesity, and hypertension, has not worked since

---

[1] A de novo hearing was previously scheduled for July 29, 2008 (Tr. p. 24). However, that hearing was postponed so Belgard could obtain counsel (Tr. pp. 25-29). At the second hearing, Belgard again appeared without counsel and stated that he wanted to proceed (Tr. p. 32).

September 1, 2003, and had the residual functional capacity to perform the full range of sedentary work as of the date on his opinion on February 24, 2010 (Tr. pp. 48-53).

Belgard requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 1) and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Belgard next filed this appeal for judicial review of the Commissioner's final decision. Belgard raises the following issues for judicial review on appeal (Doc. 9):

> 1. The ALJ failed to properly evaluate and weigh the opinion of Dr. John Sandifer, an orthopedic surgeon.
>
> 2. The ALJ's residual functional capacity assessment fails to include well-supported functional limitations from Dr. Sandifer's consultative examination.
>
> 3. Consequently, the ALJ's residual functional capacity finding is not supported by substantial evidence and the ALJ's decision merits reversal.

The Commissioner filed a brief in response to Belgard's appeal (Doc. 10), to which Belgard replied (Doc. 11). Belgard's appeal is now before the court for disposition.

## Eligibility for Benefits

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. 1382(a). To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff

2

must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

## ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Belgard (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential

process ends.  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.  Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled.  Under the regulations, this means the claimant bears the burden of proof on the first four steps of the sequential analysis.  Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy.  Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Belgard has not engaged in substantial gainful activity since September 1, 2003 (Tr. p. 48), he had disability insured status through June 30, 2009, and he has severe impairments of degenerative disc disease of the lumbar spine, gout of both feet, obesity, and hypertension, but he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. pp. 48-50).  The ALJ found that, although Belgard suffers from adult onset diabetes mellitus, it is non-severe because it is controlled with medication and does not cause any significant restrictions on Belgard's activities (Tr. p.49).  The ALJ also found that Belgard is unable to perform his past relevant medium to heavy work as a butcher (Tr. p. 52).  The ALJ further found that, although Belgard had abused

4

illegal drugs (crystal meth), that had not become an issue in this case since he did not find Belgard is disabled (Tr. p. 50).[2]

At Step No. 5 of the sequential process, the ALJ further found that Belgard has the residual functional capacity to perform the full range of sedentary work (Tr. p. 52). The ALJ found the claimant is a younger individual with a limited (eighth grade) education and that transferability of work skills is immaterial (Tr. p. 52). The ALJ found a conclusion of "not disabled" was directed by Rule 201.25 of Table 1, Appendix 2, of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, and, therefore, Belgard was not under a "disability" as defined in the Social Security Act at any time through the date of the ALJ's decision on February 24, 2010 (Tr. pp. 52-53).

### Summary of Pertinent Facts

Belgard was 40 years old at the time of his administrative

---

[2] Section 105 of the Contract with America Advancement Act (CAAA) of 1996, Pub. L. No. 104-121, 110 Stat. 847, 852-55 (1996), amended pertinent portions of the Social Security Act to prohibit the award of DIB and SSI to individuals disabled by alcoholism or drug addiction. See 42 U.S.C. §§ 423(d)(2)(C), 1382(c)(3)(J). Congress has a legitimate interest in discouraging alcohol and drug abuse, and Section 105 is rationally related to this purpose in that it withholds social security benefits from those who likely would use the funds to purchase alcohol or drugs. Mitchell v. Commissioner of Social Security, 182 F.3d 272, 273-4 (4th Cir. 1999).
Under the amended regulations, the key factor the Commissioner must examine in determining whether drugs or alcohol are a contributing factor to the claim is whether the Commissioner would still find claimant disabled if he or she stopped using drugs or alcohol. 20 C.F.R. § 416.935(b)(1). Under this regulation, the ALJ must evaluate which of the claimant's current physical and mental limitations would remain if plaintiff stopped using alcohol, and then determine whether any or all of the claimant's remaining limitations would be disabling.

hearing in December 2009, had an eighth grade education, and has work experience as a butcher (1988-2003) (Tr. pp. 33-34, 147).

In March 2003, Belgard was examined for complaints of right foot and ankle pain for three days, with redness and swelling; Belgard reported having had several such flare-up in the past (Tr. p. 178). Belgard claimed he was unable to stand to be weighed, but stated he weighed about 305 pounds (Tr. p. 178). Belgard was diagnosed with acute gout and prescribed Colchicine for gout, Prednisone and Lortab (Tr. p. 178).

In May 2003, Belgard complained he had chronic pain in both feet, but had not had a gout flare-up several weeks (Tr. p. 177). Belgard also stated he had problems sleeping and that he falls asleep during the day (Tr. p. 177). Belgard had edema in both extremities and varicosity in both feet, his blood pressure was 140/90, and he weighed 351 pounds (Tr. p. 177). Belgard was diagnosed with gout, arthritis in his feet and ankles, and morbid obesity, prescribed Allopurinol for gout, counseled on Lortab use, and advised to lose weight (Tr. p. 177).

Later in May 2003, Belgard complained of increased swelling and pain in his right ankle and foot for one week (Tr. p. 176). Belgard's blood pressure was 170/100, he weighed 345 pounds, his right foot and ankle were swollen, tender and warm with mild erythema, and his right calf was very firm but nontender (Tr. p. 176). Belgard was diagnosed with a gouty flare-up and prescribed Indomethacin and Colchicine (Tr. p. 176). Belgard was also diagnosed with hypertension and advised to lose weight (Tr. p.

176).

In early June 2003, Belgard reported he did better as long as he stayed off his feet, he weighed 341 pounds, his blood pressure was 142/90, and the redness and swelling in his feet were resolved (Tr. p. 175). In late June 2003, Belgard's left foot was hurting, mildly swollen, and painful when bearing weight, but was not red or warm and he denied having injured it (Tr. p. 174). Belgard weighed 330 pounds and his blood pressure was 150/100 (Tr. p. 174). Left foot pain, synovitis, and sleep apnea were diagnosed (Tr. p. 174). X-rays were ordered, and he was prescribed Naprosyn and Allopurinol and told to continue his weight loss (Tr. p. 174).

In August 2003, Belgard continued to complain of bilateral foot and ankle pain which made him unable to stay on his feet for any prolonged period of time (Tr. p. 173). Belgard's ankles were tender, he was diagnosed with severe gout in both ankles and morbid obesity, and he was prescribed Allopurinol, Colchicine, and Naprosyn, and a rheumatology consult was ordered (Tr. p. 173).

In August 2007, Belgard (then 38 years old) went to the emergency room with complaints of edema, shortness of breath, and arm pain; he reported a history of congestive heart failure but was not taking medications, and he had edema in all extremities (Tr. p. 181). Belgard was noted to be in mild distress, his breathing was normal, his skin was dry, pink, and warm, he was awake, alert, oriented, calm and cooperative (Tr. p. 181). Belgard admitted that he used drugs, smoked half a pack of cigarettes a day, and had used crystal meth five days ago (Tr. p. 181). Belgard had chest pain,

dyspnea on exertion, shortness of breath, expiratory and inspiratory wheezing, color changes, pedal edema, jugular venous distention, and swelling in his lower extremities with chronic hyper pigmentation changes, but full ranges of motion (Tr. pp. 185-186). Belgard's electrocardiogram and lab results were normal except for his albumin, glucose and creatine kinase levels, and the presence of amphetamines (Tr. pp. 186-187). An x-ray of Belgard's chest showed a moderate degree of cardiomegaly but was otherwise normal (Tr. p. 189).

Belgard had a consultative examination by Dr. Daniel Denison[3] in October 2008 (Tr. p. 190). Belgard reported that he suffers from gout (4 to 6 attacks per year), asthma since childhood (but no severe attacks in several years), smokes one pack of cigarettes per day (for 18 years), has an enlarged heart (but was not on diuretics and had no history of chest pain), low back pain which radiates down the left leg, swelling in his feet due to congestive heart failure, and sleep apnea, and denied having hypertension (Tr. p. 190). Dr. Denison found that Belgard was 5' 11" tall, weighed 370 pounds and his blood pressure was 139/90 (Tr. p. 192). Dr. Denison noted that Belgard ambulated without difficulty, had no problem getting on and off the exam table, and was able to dress and undress himself without problems (Tr. p. 192). Dr. Denison did not find any problems with Belgard's lungs, heart, ranges of motion, spine and extremities, or neurological problems, but x-rays showed

---

[3] Dr. Denison's curriculuum vitae was not included in the administrative record.

mild "perihelar" vascular congestion and mild lumbosacral degenerative joint disease without any loss of disc height (Tr. pp. 192-193). Dr. Denison stated there was no evidence of gout, wheezing or edema that day, no airspace disease, no heart or back problems, and no evidence of sleep apnea other than Belgard's own report as to what his family members had told him (Tr. p. 193). Dr. Denison further stated that, although Belgard denied having hypertension, his blood pressure was at the upper limits of normal (Tr. p. 193). Dr. Denison concluded there was no clinical evidence that day to support a functional limitation (Tr. p. 194).

Belgard underwent chest x-rays due to reported chest pain in February 2009 (Tr. p. 212). The x-rays showed that Belgard's heart size and vasculature were normal, and he had minimal strandy appearing areas of atelectasis or fibrosis in the area of the lingula (upper lobe of the left lung) (Tr. p. 212). In March 2009, Belgard was noted to have a recent diagnosis of diabetes mellitus, diagnoses of hypertension and morbid obesity, and possible obstructive sleep apnea and chronic obstructive pulmonary disease (Tr. p. 211). A spirometry test in April 2009 was normal (Tr. p. 208). Belgard's echocardiogram was also normal (Tr. pp. 204, 210).

In June 2009, Belgard's diabetes mellitus was controlled, and he was continued on his medications, prescribed Advair (an inhaler), and told to increase his exercise (Tr. p. 206).

Belgard underwent another consultative exam in January 2010 with Dr. John Sandifer, an orthopaedic surgeon (Tr. p. 214). Dr. Sandifer noted Belgard was obese, his lumbar spine had 30 degrees

flexion and no extension (he complained of back pain radiating into his left hip and thigh), positive straight leg raising on the left, no motor weakness, and 30 degrees flexion and 20 degrees extension in both ankles (Tr. p. 214).  X-rays showed degenerative disc disease at L4/L5 and L5/S1, some degenerative changes in the 1st MTP (metatarsophalangeal, or big toe) joints of the left and right feet, and early degenerative changes in his left knee (Tr. p. 215). Dr. Sandifer diagnosed degenerative disc disease of the lumbar spine with chronic back pain and nerve root irritation, a history of gout with gouty arthropathy in both feet, adult onset diabetes mellitus ("AODM"), and chronic obstructive pulmonary disease ("COPD") with asthma (Tr. p. 215).

Dr. Sandifer also filled out a residual functional capacity assessment form, finding Belgard can occasionally (up to 1/3 of an eight hour work day) lift/carry up to ten pounds (Tr. p. 216), sit without interruption up to fifteen minutes at a time and up to two hours in an eight hour day, stand without interruption up to ten minutes at a time and up to one hour total in an eight hour day, and walk without interruption up to ten minutes at a time and up to one hour total in an eight hour day; Dr. Sandifer did not specify what other activity Belgard would be performing the remaining 4 hours of the eight hour day (Tr. p. 217).

Dr. Sandifer further found Belgard can reach overhead frequently (1/3 to 2/3 of an eight hour day), do other reaching occasionally, and can handle objects, finer objects, feel objects, and push or pull occasionally (Tr. p. 218), but can never operate

foot controls, climb stairs, ramps, ladders or scaffolds, balance, stoop, kneel, crouch, or crawl (Tr. pp. 218-219). Dr. Sandifer also found Belgard can work around moderate (office level) noise, and can occasionally work around moving mechanical parts or operate a motor vehicle, but can never work around unprotected heights, in humidity and wetness, around dust, odors, fumes and pulmonary irritants, in extreme cold or heat, or around vibrations (Tr. p. 220). Finally, Dr. Sandifer stated that Belgard can shop, ambulate without an assistive device, walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, prepare a simple meal and feed himself, care for his personal hygiene, and sort, handle and use paper and files, but cannot travel without a companion for assistance and cannot climb a few steps at a reasonable pace with the use of a single hand rail (Tr. p. 221).

At his December 2009 administrative hearing, Belgard testified that he was 40 years old, can read but cannot spell very well, can do some arithmetic, and is right-handed (Tr. p. 33). Belgard testified he last worked for a couple of months in 2006, as a butcher, but stopped due to pain (Tr. p. 34). Before that, Belgard worked as a butcher for fifteen years before he was fired in 2003 for taking too much sick leave (Tr. p. 34). Belgard testified he is not married, does not have any children, and lives with his mother, sister, step-father, and niece (Tr. p. 35).

Belgard testified he has trouble with pain in his left leg and his feet if he walks even a little, and his feet swell when he sits

11

(Tr. p. 35). Belgard testified that he can sit for a couple of hours at a time, stand 30 to 40 minutes at a time, walk 30 to 40 minutes at a time, and has a lot of trouble bending (Tr. p. 36). Belgard testified that he weighed 378 pounds and was 5'9" tall (Tr. p. 36). Belgard admitted his doctor had told him that some of his problems are caused by his weight; however, when he lost 118 pounds several years ago, he still had problems with his left leg and back (Tr. p. 36). Belgard testified his doctor has ordered an MRI (Tr. p. 36).

Belgard testified that he does not help around the house very much, but does some cooking; hauling firewood and mowing the lawn make him hurt (Tr. p. 37). Belgard testified that he believes he can cut meat 20 to 25 hours per week, so he had recently applied for work, but no one wanted to hire him to work part time (Tr. p. 38). Belgard testified that he has only worked as a butcher (since he was 13 years old) (Tr. p. 38).

Belgard's mother, Dora Mills, testified that Belgard's weight, back and leg problems prevent him from being able to do much (Tr. p. 38).

### Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial,

it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

Law and Analysis

Belgard contends the ALJ failed to properly evaluate and weigh the opinion of Dr. John Sandifer, an orthopedic surgeon. Belgard contends the ALJ's residual functional capacity assessment fails to include well-supported functional limitations from Dr. Sandifer's consultative examination, so the ALJ's residual functional capacity finding is not supported by substantial evidence and his decision merits reversal.

The weight to be given a physician's statement is dependent upon the extent it is supported by specific clinical findings. Elzy v. Railroad Retirement Board, 782 F.2d 1223, 1225 (5th Cir. 1986); Jones v. Heckler, 702 F.2d 616, 621 (5th Cir. 1983). An acceptable medical opinion as to disability must contain more than a mere conclusory statement that the claimant is disabled. It must be supported by clinical or laboratory findings. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981). The ALJ is required to give substantial weight to the doctors' medical findings, not to their opinions about the actual availability of jobs for a person. Loya v. Heckler, 707 F.2d 211, 214 (5th Cir. 1983). Thus, the ALJ could properly discount the medical assessment stating that * was completely disabled.

Dr. Sandifer gave an opinion as to Belgard's residual functional capacity based on his consultative examination of Belgard. The ALJ stated in his decision that Dr. Sandifer's findings, that Belgard can lift/carry up to 10 pounds occasionally, sit up to 2 hours a day, and stand/walk up to 1 hour a day, are not

14

supported by the overall evidence (Tr. p. 51). It is noted that the ALJ failed to account for what posture Belgard could assume for the remaining four hours of the eight hour day.

Belgard testified that he can sit for a couple of hours at a time, stand for 30 to 40 minutes at a time, and walk for 30 to 40 minutes at a time. The ALJ stated that, although Dr. Sandifer confirmed Belgard has degenerative disc disease,[4] it is in an early stage and does not render him entirely unable to function (Tr. p. 51). Dr. Denison's 2008 x-rays showed mild degenerative joint disease of the lumbosacral spine with no loss of disc height (Tr. p. 193).

The ALJ also noted that Belgard's treating physicians found his impairments are fairly well controlled with medication (Tr. p. 51). The ALJ further noted that Belgard testified that he was applying for part time jobs as a butcher, and found Belgard could perform the full range of sedentary work, reasoning that his periodic gout flare-ups are controlled with medication and his early stage degenerative disc disease does not preclude sedentary work (Tr. p.5 1). Although Belgard testified he did not believe he could work full time as a butcher (which is medium to heavy work), be thought he could do that work 20 to 25 hours per week.

The ALJ concluded, on the basis of Belgard's testimony and the weight of the objective medical evidence, that Belgard can sit up

---

[4] It is not clear whether Dr. Sandifer took his own x-rays or whether he used x-rays which were previously taken, such as Dr. Denison's. If Dr. Sandifer took his own x-rays of Belgard, the x-ray report is neither attached to his report nor is it described in his report.


to 6 hours in an eight hour day and up to 2 hours at a time, carry up to 10 pounds at a time, and stand or walk up to a total of two hours in an eight hour day, so he is capable of performing the full range of sedentary work (Tr. p. 51).

Belgard points out that the ALJ failed to consider Dr. Sandifer's findings that Belgard should never stoop or use foot controls, citing SSR 96-9, "Determining Capability to do Other Work." First, it is noted that SSR 96-9 states: "Limitations or restrictions on the ability to push or pull will generally have little effect on the unskilled sedentary occupational base." Therefore, an inability to use foot controls would not affect Belgard's ability to perform sedentary work.

SSR 96-9 also states: "An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping." Although the ALJ did not mention stooping in his decision, he found that not all of Dr. Sandifer's restrictions are supported by the overall evidence (Tr. p. 51). Since Dr. Sandifer did not explain or show why he found Belgard is unable to stoop, and his opinion does not appear to be supported by the objective

medical evidence (Dr. Sandifer found Belgard's knees had equal reflexes, no motor weakness, and were stable to stress testing despite early degenerative changes), the ALJ correctly disregarded Dr. Sandifer's opinion as to Belgard's ability to stoop.

Therefore, substantial evidence supports the ALJ's/Commissioner's finding that Belgard can perform the full range of sedentary work. Therefore, Belgard's appeal should be denied.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED and that Belgard's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN fourteen(14) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 15th day of February 2012.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE